[Cite as *State v. Lyttle*, 2013-Ohio-2608.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  2-12-22

    v.

RUSSELL G. LYTTLE,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2012-CR-77

**Judgment Affirmed**

**Date of Decision:   June 24, 2013**

APPEARANCES:

    *Gerald F. Siesel*  for Appellant

    *Edwin A. Pierce*  for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Russell G. Lyttle ("Lyttle"), appeals the judgment of the Auglaize County Court of Common Pleas, finding him guilty and sentencing him to thirty months in prison after Lyttle pled guilty to one count of possession of marijuana. On appeal, Lyttle contends that his sentence was contrary to law and an abuse of discretion because it greatly exceeded the jointly recommended sentence in the plea agreement and because the trial court did not properly consider and apply the felony sentencing guidelines. For the reasons set forth below, the judgment is affirmed.

{¶2} On May 30, 2012, the Auglaize County Grand Jury returned a single-count indictment charging Lyttle with possession of marijuana, in violation of R.C. 2925.11(A)(C)(3)(e). The possession of more than 5,000 grams of marijuana but less than 20,000 grams is a felony of the third degree.

{¶3} Lyttle, who was 32, lived in Detroit with his mother and eighty-year old grandfather. Lyttle's cousin, Tariq Haliburton ("Haliburton" or "co-defendant") lived in Washington State, but had come back to Detroit to visit. Haliburton asked Lyttle to come with him for the weekend to a party in Dayton where Haliburton had attended college at Central State. Haliburton did not have a car, so Lyttle borrowed his grandfather's car.

**{¶4}** At about 12:25 a.m. on May 6, 2012, Trooper Barhorst clocked the vehicle going 70 mph in a 65 mph zone. Upon following the vehicle, which Haliburton was driving, the trooper observed suspicious behavior, slowing down to 50 to 55 mph, as if the driver was attempting to get the trooper to pass him. The trooper effectuated a traffic stop and noticed an odor of marijuana coming from inside the vehicle. Haliburton admitted he had smoked some marijuana earlier that day. During a pat-down search of Haliburton, the trooper discovered a vacuum baggie that contained a small amount of marijuana (1.28 grams). Upon searching the vehicle, 17 bags of marijuana totaling 7042.22 grams, or approximately 15.53 pounds, were found in a black duffel bag inside the trunk of the car. The estimated street value of the marijuana was approximately $112,000. Lyttle, who was a passenger in the vehicle, stated that he was sleeping at the time of the alleged traffic offense, so he did not know whether Haliburton had exceeded the speed limit. He claimed that he did not know that Haliburton had marijuana in the trunk of the car. Both Haliburton and Lyttle were arrested.

**{¶5}** Lyttle entered a plea of not guilty, and he was eventually released on bond after twenty days in jail. Lyttle's attorney also filed a motion to suppress.

**{¶6}** A hearing on the motion to suppress was scheduled for August 29, 2012. However, the parties advised the trial court that they had entered into plea negotiations and had reached a joint agreement. The terms of the written plea

agreement stated that "The State and Defendant jointly recommend an 18 month sentence under [R.C.] 2953.08(D), and the 18 months [would] be either a period of incarceration or community control notification." In return, Lyttle would change his plea to guilty and would also withdraw the motion to suppress. The trial court advised Lyttle to "listen carefully to the negotiations that are going to be put before me and make sure that that's what you understand them to be, okay?"

{¶7} The prosecutor stated that the sole count in the indictment was a third degree felony, which carried a maximum prison term of thirty-six months and a maximum fine of $10,000. The prosecutor then stated:

> Prison is not mandatory but it is presumed necessary. The State would not object to a Presentence [Investigation] nor the continuation of bond. The other agreement is that the State and the Defendant jointly recommend an eighteen month sentence under 2953.08(D) and that the eighteen months be either a period of incarceration or a community control notification.

(Change of Plea Hrg. Tr. 3-4) The State then presented the written plea agreement to the trial court, which had been signed by the prosecutor, Lyttle, and Lyttle's attorney.

{¶8} The trial court proceeded with the Crim.R. 11 colloquy and informed Lyttle of the rights that he was foregoing by entering his plea and not going forward with a trial. Lyttle indicated that he understood. The trial court also informed Lyttle that the court could determine he was not amenable to community control sanctions and send him to prison, and that, in fact there was a presumption

in favor of prison. As a third degree felony, the potential prison sentence for the offense could be 9 months, 12 months, 18 months, 24 months, 30 months, up to a maximum of 36 months, along with a license suspension, and possibly a fine. (Tr. 6-7).

{¶9} The trial court then repeated the terms of the plea agreement, stating that "Now these two [referring to the prosecutor and Lyttle's attorney] are entering into a joint recommendation. That means they join in recommending an 18-month sentence for you and if I follow that 18-month sentence, whether that's an 18-month notification or that's an 18-month penitentiary sentence, in either event, you're giving up your rights to appeal. Do you understand?" (Tr. 11) The trial court also reminded Lyttle that he would be "forever giving up those issues that have been raised in the motion to suppress." (Tr. 12)

{¶10} The following exchange also took place:

THE COURT: Do you understand that I am not obligated to follow the recommendation that these two make? Just because they join in a recommendation, the bottom line is at the end of the day I have to look myself in the mirror. At the end of the day, I'm the guy who has to call the sentencing. Do you understand?

LYTTLE: Yes, Your Honor.

THE COURT: So I listen to them and I consider their views and what they have to say. I also consider several pages worth of Ohio Revised Code, all the information that I can get and in the end, I have to look at myself in the mirror, so I'm the guy who calls it. So as I sit here right now, I don't know what sentence that I'm going to

give you, so nobody else can promise you anything on my behalf. Do you understand?

LYTTLE:      Yes, Your Honor.

(Tr. 13)

**{¶11}** The trial court then gave Lyttle an opportunity to ask questions, ascertained that he was satisfied with his counsel's representation, and then proceeded to accept Lyttle's guilty plea.  The State reviewed the facts of the case, as outlined above.

**{¶12}** The trial court then addressed Lyttle again.

THE COURT:       Mr. Lyttle, whose pot was this?

LYTTLE:            My cousin's.

THE COURT:       Who's that?

LYTTLE:            Mr. Halliburton

THE COURT:       The driver?

LYTTLE:            Yes, Your Honor.

THE COURT:       Whose car was it?

LYTTLE:            My grandfather's.

THE COURT:       Who borrowed it from grandpa?

LYTTLE:            I did.

(Tr. 16)

{¶13} The trial court then ordered a presentence investigation ("PSI"), and continued sentencing for approximately six-to-eight weeks. Lyttle was admonished to adhere to the conditions placed upon bond.

{¶14} The sentencing hearing was held on November 7, 2012. The State presented its position on sentencing, which was a recommendation for community control.

> Your Honor, after reviewing the presentence investigation and the facts of this case, and the fact that Mr. Lyttle's co-defendant, Mr. Haliburton, admitted to being the primary person involved in the ownership in trafficking in the marijuana, the State is not opposed or is recommending community control for Mr. Lyttle.

(Sent. Tr. 3)

{¶15} There was then a discussion of the PSI report, wherein Lyttle indicated that it contained several errors concerning his criminal history. Lyttle represented that his uncle and his uncle's son both had the exact same name as he did, and several of the offenses listed on the PSI belonged to his uncle or cousin. The trial court then went through the various offenses in the PSI, and Lyttle admitted to the offenses that were his, and told the court which ones involved his relatives. Most of Lyttle's admitted offenses involved traffic and DUI convictions: 2001- driving while license suspended/revoked; 2002 - driving while license suspended/revoked and DUI/open container; 2002 - failure to appear; 2004 - driving while license suspended/revoked; 2005 driving while license

suspended/revoked; 2006 misdemeanor traffic offense; 2009 driving while license suspended/revoked (report said 30 days in jail, but Lyttle stated it was only 3 days in jail).

{¶16} There were two relatively more serious offenses in 2004 for uttering and publishing, and larceny by conversion when he forged/altered/published a cashier's check in the amount of $7,459 involving payment for back child support. Lyttle represented that he has been paying restitution to the county for that and he had paid back about half of it. He completed his probation for this in 2010.

{¶17} There were also outstanding warrants for his arrest for two district courts in Michigan, which Lyttle claimed were for traffic tickets, as well as for the 2002 failure to appear for DUI. He claimed he was trying to take care of these matters, but was having difficulty because of scheduling issues with the courts and the mix-up in records because of his family members with the same names. (Sent. Tr. 15-16) He claimed that 85% of the tickets were not his and belonged to the other family members. For example, he contends that he has a ticket on his record from 1985, when he was seven years old. (*Id.*)

{¶18} There was also a discussion on the record about the fact that Lyttle had tested positive for THC (marijuana), although the conditions of his bond were that he could not use any drug of abuse. (Sent. Tr. 12) Lyttle claimed that he had a prescription and a card for medical marijuana, and so he did not believe it

qualified as an illicit substance. Lyttle represented that he was prescribed 3 grams per week, at a cost of $50 per week that he takes to alleviate pain from an injury. (*Id.* at 13) However, the trial court never received confirmation from the doctor's office to verify that he had a prescription. (*Id.*)

{¶19} After thoroughly questioning Lyttle concerning his employment, education, and other background items, the trial court stated:

> The Court notes that [Lyttle] has had outstanding warrants for his arrest out of at least three jurisdictions at the time of the commission of the offense in this case. This Court accepts almost all of [Lyttle's] comments concerning this relative and these other offenses, the felonies and so forth. I accept that. But, there are outstanding warrants and it's [not] just pending court dates. They're outstanding warrants for [Lyttle's] arrest. So, I do not accept the statements concerning those matters.
>
> The Court noting that this is a felony of the third degree, after considering the information provided to the Court by the parties and the PreSentence Investigation, the Court sentences [Lyttle] to thirty months at the Department of Rehabilitation and Corrections plus post release control which the court imposes as a mandatory term of post release control for three years. * * *

(Sent. Tr. 16-17). The trial court did not impose a fine, noting that Lyttle was indigent, and he was given credit for twenty days already served against his thirty-month sentence.

{¶20} It is from this judgment that Lyttle now appeals, raising the following assignment of error for our review.

## First Assignment of Error

**The trial court's sentencing of [Lyttle] to a sentence totaling 30 months, being in excess of the jointly recommended 18-month sentence (R.C. 2953.08(D)) was contrary to law and further constituted an abuse of discretion in failing to properly consider and apply the felony sentencing guidelines set forth in Ohio Revised Code, Section 2929.11 and 2929.12**

{¶21} Lyttle raises several issues in his assignment of error, alleging that the thirty-month sentence imposed by the trial court was excessive, contrary to law, and an abuse of discretion. Lyttle asserts that the sentence was in excess of the jointly recommended 18-month sentence. He also claims that the trial court erred when it failed to consider the felony sentencing guidelines set forth in R.C. 2929.11 and R.C. 2929.12.

{¶22} Ever since the Ohio Supreme Court's ruling in *State v. Foster*, 109 Ohio St.3d 1, 2006–Ohio–856, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Mathis*, 109 Ohio St .3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 37. The enactment of H.B. 86, effective September 30, 2011, modified some aspects of the sentencing statutes and now requires a trial court to make certain findings before imposing consecutive sentences. R.C. 2929.14(C)(4); *State v. Rust,* 3d Dist. No. 9-12-49, 2013-Ohio-2151, ¶ 14. However, Lyttle's sentence does not involve consecutive sentences and his issue on appeal was not affected by

the modification to the sentencing guidelines. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). It involves views or actions "that no conscientious judge, acting intelligently, could honestly have taken ." (Internal citations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 2006–Ohio–160, ¶ 129–130.

{¶23} Courts, nevertheless, are still required to comply with the sentencing laws unaffected by *Foster*, such as R.C. 2929.11 and 2929.12, which require consideration of the purposes and principles of felony sentencing and the seriousness and recidivism factors. *Mathis* at ¶ 38. However, a sentencing court does not have to make any specific findings to demonstrate its consideration of those general guidance statutes. *Foster* at ¶ 42.

{¶24} Lyttle complains that the trial court did not follow joint-sentencing recommendation set forth in the plea agreement. However, it is well-settled that a trial court has no duty to accept the State's sentencing recommendations. *State v. Graham*, 3d Dist. No. 14-04-28, 2005-Ohio-1431, ¶ 11, *citing State v. Kitzler*, 3d Dist. No. 16-02-06, 2002-Ohio-5253. Trial courts may reject plea agreements and are not bound by a jointly recommended sentence. *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, ¶ 28. "A trial court does not err by imposing a sentence greater than that forming the inducement for the defendant to plead guilty when

the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor." *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005–Ohio–3674, ¶ 6; *State v. Spencer*, 3d Dist. No. 6–12–15, 6–12–16, 2013-Ohio-137, ¶ 10.

{¶25} In the case before us, the record demonstrates that the trial court very clearly informed Lyttle that it was under no obligation to follow the recommendation in the plea agreement. Lyttle indicated that he understood and concurred.

{¶26} Lyttle also contends that his sentence was contrary to law because "at sentencing the court failed to indicate on the record that it had considered any of the applicable factors." (Appellant's Br. p. 10) He claims that the trial court's statements during the hearing "are silent as to any reference that the Court considered the seriousness and recidivism factors enumerated in R.C. 2929.12," or any of the other factors in R.C. 2929.12. (*Id.* at p. 11) Lyttle then presents his analysis under these statutory sections and then claims that the trial court erred because it apparently did not come to the same conclusion.

{¶27} First, we find that the journal entry did clearly indicate that the trial court considered the factors set forth in R.C. 2929.11 and R.C. 2929.12. *See* Nov. 7, 2012 J.E. ("The Court has considered the record, oral statements * * * and Pre-Sentence Report prepared, as well as the principles and purposes of sentencing

under Ohio Revised Code 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code 2929.12.") This is sufficient to satisfy the requirements set forth in *State v. Arnett*, 88 Ohio St.3d 208, 2000-Ohio-302. *See, also*, *State v. Scanlon*, 3d dist. No. 2-08-18, 2009-Ohio-2305, ¶ 4. And, the sentence imposed was within the range allowed by R.C. 2929.14.

{¶28} Although the trial court did not specify which particular sections of the statutory factors it considered, the record indicates that the trial court did consider these factors as indicated in the extensive dialogue between the trial court and Lyttle, both at his change of plea hearing and at the sentencing hearing. See excerpts above. The trial court explicitly discussed applying the guidelines in the Ohio Revised Code to the facts and information it is able to discern from discussions with defendants and the PSI. ("I listen to them and I consider their views and what they have to say. I also consider several pages worth of Ohio Revised Code, all the information that I can get and in the end, I have to look at myself in the mirror, so I'm the guy who calls it." Sent. Tr. 13)

{¶29} The 30-month prison sentence handed down by the trial court was within the range for a third degree felony, and the trial court clearly indicated that it considered the applicable factors in the Revised Code when it sentenced Lyttle. Accordingly, Lyttle's assignment of error is overruled.

**{¶30}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**